All rise. The United States Court of Appeals for the Right to Circumstance is now in session. Please be seated. Good afternoon and welcome to the Ninth Circuit Court of Appeals. This is the time set for rehearing en banc of the case of Noelle Lee v. Robert J. Fisher. If the parties are ready to proceed, we may begin. Good afternoon and may it please the Court. Yuri Kaliskov from Bikini Bikini on behalf of plaintiff appellant. With the Court's permission, I would like to reserve ten minutes for rebuttal. This appeal presents a discrete and fundamentally important question for the Court's determination. Will the company can wield a forum by-law to completely abrogate the shareholders' right to bring a derivative Section 49A claim? In answering this question, this Court's inquiry can start and end with the Exchange Act's unpaid waiver provision in Section 49A, which voids any attempt to waive compliance with the substantive requirements of the Act. Now, the Exchange Act was one of two landmark securities legislation passed by Congress in the wake of the disastrous 1929 stock market crash and in response to the widespread abuses in the securities industry. In passing the Act, Congress attempted to restore investor confidence in our capital markets. To achieve compliance, the Act creates an extensive scheme to the liability, which includes both express private rights of action as well as implied private rights of action that the Supreme Court has found to be implied by the terms of the Act, included under Sections 10B and Section 49A, which are issued in this case. In Borak, the Supreme Court, after examining Section 49A and Section 27, concluded that the existence of a derivative cause of action was necessary for the effective enforcement of the Act's substantive proxy requirements. It specifically held that there should be a derivative cause of action because the injury that usually happens when there is a deceptive proxy solicitation usually harms the company and shareholders as a whole rather than shareholders individually. Why do you think the anti-waiver provision applies here when your client has a direct claim, there's a state law derivative claims, the SEC could come in? I mean, in what sense has GAAP waived its compliance with the substantive obligations of the Exchange Act? So this is not just whether GAAP waives compliance, Your Honor. It's whether there's a waiver of any provision under the Act, which the Supreme Court has construed to be a substantive provision of the Act, but it's not limited. Why isn't the derivative feature of this just a mechanism of enforcement? Why are you treating it, or why would you argue it's a substantive component? Well, the Supreme Court, both in Borak and later in Mitsubishi, did say that existence of a prior cause of action is a necessary mechanism to enforce the substantive requirements of the Act. If there's no prior cause of action, there might not be compliance with the Act. Well, do you believe your client has a direct claim? Could this be fashioned as a direct claim? In this instance, we do not believe that there is a direct claim under the facts of SLSA complaints, but that doesn't matter, Your Honor. Even if there's a direct claim, the two claims are separate, according to the derivative cause of action, specifically because the company inside it might not be willing to sue themselves for alleged violations of the law. So in this case, it's important Congress and the Supreme Court in Borak felt it was important to have both a direct and a derivative cause of action to enforce the requirements. Is the relief important here? Can you summarize the remedies that Ms. Lee is seeking in her lawsuit? And if the relief would be the same under 14, a direct action versus a derivative action? I don't believe so, Your Honor. One of the reliefs that's being sought is a discouragement of the unjust compensation bonuses. It is unlikely that a shuffler suing directly would be able to get that remedy because they won't be able to show any harm to them. They won't be able to show how they can recover compensation paid to the company when they, as a shareholder, were not injured. As opposed to a derivative action, here we allege the company was injured because they had to pay what we call unjust compensation bonuses. So the relief would be different in a direct action versus a derivative action. So is it your view that a difference in remedy is the same as compliance with the substantive obligations? If you have a different remedy under a derivative versus a direct action, would that, how is that a waiver of compliance for purposes of 29A? We do believe that the fact that there are different remedies is a fact of the court, etc., but even if the remedies were the same, Congress and the Supreme Court in interpreting Section 49A in BORAC did conclude that it was important to have the substantive requirement because the company might not fool itself and because the SEC might not be able to bring the enforcement action, which goes to Your Honor's question from before. The Supreme Court in BORAC specifically examined this question and said the SEC does not have the resources to go through all the proxy filings every year and to bring a timely enforcement action. That's why, just like the trouble damages under the antitrust litigation statute, it's important, the court said in BORAC, to have a derivative action in order to enforce compliance with the substantive requirements of the proxy. Now going to the state remedies, one of the issues that the panel raised, previously this court raised, was that potentially there is a derivative, which would use the action that we can bring in Delaware court. And again, we would submit that that is not sufficient to protect the substantive requirements of the act. And I would point to page 435 of the BORAC decision. The court, the Supreme Court in that case, actually did address this issue and it said a prior court of action was necessary because state remedies might not be sufficient. And as two examples, the Supreme Court in BORAC highlighted one was the expense statute that would require plaintiffs to put up a bond to prosecute a derivative action. That was the case in BORAC. That is the case in California, for example. Under California Corporation Code 800, the court may require a shareholder to put up a bond to bring a derivative action. That's not a requirement in the federal law. In addition, the Supreme Court in BORAC highlighted the fact that the state court might not be able to get procedural jurisdiction over all defendants. Again, the federal act remedies that issue because it provides in Section 27 for nationwide service of process. Therefore, it's easier to obtain procedural jurisdiction over all defendants. Again, that might not be the case in state court. Separately, a breach of fiduciary duty claim under Delaware law for proxy violations would require plaintiffs to show heightened scienta over bad faith rather than mere negligence, which is applicable to the Section 48 claim. In addition, under Delaware law, under Section 42B7, Delaware directors can be exculpated for mere negligence. Again, that's actually applies to breaches of fiduciary duty claims. It does not apply to security violation claims. So these, it seems to me, are arguments as to why the claim you want to bring, you think might be a more effective mechanism for enforcing the securities laws, but the anti-waiver provision is speaking to waiving compliance. And so in what sense, given everything you've said, even assuming it's true, how is compliance been waived, compliance with the substantive obligations of the Exchange Act? It's been waived, Johanan, because the bylaw deprives the shareholders of the right of action, which the Supreme Court in Bora concluded was necessary for the enforcement of the Act. And again, I would point to Mitsubishi, where the court said, you don't need a right of action because that's what is necessary to enforce the substantive requirements of the Act. And in both, the Supreme Court has never enforced a forum selection clause or an arbitration clause that will completely abrogate a cause of action. In all of the arbitration cases that were cited by the other side in this case, including the McMahon decision, the Rodriguez decision, the Mitsubishi decision, there was never a case where the appraised party could not go to the arbitral forum and enforce the security claims, the Exchange Act claims. And in Mitsubishi, in footnote 19, the Supreme Court did say they will have little hesitation to strike down those four bylaws if it would affect the prospective waiver of a party's right to pursue statutory remedies. The Supreme Court in Mitsubishi and in McMahon pointed out that while there may not be any waiver if all you're waiving is the forum where you bring the claim, there is a waiver under Section 29A if you're waiving statutory remedies. And there is no dispute that... Why can't you enforce the misleading proxy provision through direct cause of action? Rex? In this case, we don't believe that there is a direct claim available, Your Honor, because the harm that's been alleged is to the company. There's no top price that's alleged to have dropped as a result of the misleading statements. It's very unlikely that shareholders in this case are going to be able to show that they were directly harmed, and usually they won't be able to show that they were directly harmed by their just compensation based on the directors and the officers. But didn't any of the complainants who denied your claim allege that she was misled by the statements? Correct. All the shareholders together were misled, which, I think, totally, which is the primary decision from Delaware, which would demonstrate the harm. Even though it harmed all the shareholders equally, it didn't harm any of them individually, so it would not be a direct action. Your Honor, it would be derivative. Even so, all the shareholders, we agree, were misled through the allegedly misleading proxy statements. The harm fell on all of them together as a group, not on any of them specifically. For example, this is not a case where you have a merger, and because of the false statement, the merger consideration less, and therefore shareholders personally suffered some monetary harm. Here, there's no allegation that there was any individual harm to the shareholders. Here's the response to the amicus from the Delaware judges that says that this is a direct cause of action, that this is a direct suit. You see, obviously, we always refer to the letter from the former Delaware judges. We would submit that that, again, is not a statement of current Delaware law. We will point to, actually, the Chancellor Stride's decision in Boilermakers, where he was a judge in the Delaware court of transparency, where the court said, you cannot have problems if you try to enforce a similar claim from bylaw. But as far as direct goes, again, we don't believe it's direct action in this case. But even if it was, that still doesn't change the calculus. Even if there is a direct claim, courts have found that you could have a direct and a direct cause of action at the same time. And therefore, for example, the Jones decision. Why is it direct? Why does it matter if you can't do it through direct? Because it harms the company. As a direct, you only would get benefit to yourself as a shareholder. You will not be able to remedy a remedy that's about compliance with the subsidy provisions, right? If you could enforce the compliance through either mechanism, why does it matter if you lose one? Well, I would disagree with that, too. Again, I would point to Mitsubishi, where the court said the focus is not just on the compliance, the actual compliance of the act requirements, it's on such remedies. The court, that was in footnote 19 of the court, of that decision. From that point, I thought our en banc court addressed that footnote some years ago, which sort of leads to the question, are you asking this en banc court to overrule any precedent in the process of getting to where you think you need to be? We don't think the court needs to overrule any precedent. Again, the Supreme Court has never enforced similar forum bylaws or research declares. Now, your Honor might be referring to the Richards decision, which we don't believe this court needs to overrule because that decision arose in a completely different situation. It was part of the several cases filed around the country. And in those cases, the circuits were really dealing with truly issues of international law. In that case, plaintiffs had to go to England. They had to go there and acknowledge the risks of undertaking. There were sophisticated investors to become part of the loins of London undertaking. They had to submit sufficient funds. And so, in that sense, the court in Richards' en banc held that when you do have two equal sovereigns, the United States and England, principles of the international committee require one sovereign's law to yield. So, when the parties specifically agreed to the laws without sovereigns to govern the dispute, that is not the case here. There's only one sovereign, the federal government. And under the Supremacy Clause, the exchange act is the supreme law of the land. And it trumps any common law policy favoring foreign selection clauses. And there is not a single case from the Supreme Court that would have allowed this clause to be enforced to waive substantive compliance with the act. What would a Supreme Court case prohibit, Sid? I would submit all the cases in McMahon, in Rodriguez, in Mitsubishi, especially in Mitsubishi. The court said that in those cases, the plaintiffs can go to arbitral forum and they can enforce the substantive statutory rights under the exchange act. And it's the current, the court said in Mitsubishi, that we would have little hesitation to fire the contract of the policy. And just recently, this year, in Viking River, clauses of the Supreme Court rest on the principle that arbitration agreements do not alter or breach substantive rights. By agreeing to arbitrary statutory claim, the plaintiff does not forego the substantive rights afforded by the statute. It always submits them to the resolution of the arbitral forum. That is not the case here. Everyone agrees that the plaintiffs cannot go to Delaware Chamber of Records. It's also our precedent that federal public policy can trump, for enforcing foreign selection clauses, can trump federal statutory law. Do you agree with that? Should we overrule that part of our precedent? So, you already referred to the advanced China health care case. And we don't believe you need to overrule the decision because the decision is limited by its facts. In that case, there was no federal statute in play, which would be the Supreme Law of the land. What the court had in front of it was a state-questioned statute. And in that case, there was actually no actual way of substantive rights because defendants agreed before the District Court and the Court of Appeals that the plaintiffs could enforce the substantive California and the substantive Washington security claims in the China forum. So, we don't believe that advanced China health care requires this court to find that the common law policy of foreign selection clauses can trump the active waiver provision. That is a factor in that decision. But again, because advanced China health care did not concern a change act, the court should not follow this as an instinct. Or do you agree that that's a wrong statement? As far as it applies to a federal statute, it is a wrong statement, Your Honor. To the extent that it could be applied to a federal statute, which would not be the case in advanced health care, then this court should overrule advanced China health care on that point. Can I ask you a different question? Say we agree with you on the forum selection issue and think that this case needs to stay in federal court, but we don't think the complaint states a claim because it's too vague. I know you asked for leave to amend, but can you explain whether you could actually amend to make it less vague? Because I don't think I ever saw an explanation of how you would do that. Right, Your Honor. First of all, we would submit that the court should not reach the issues of demand futility and the merits of the 48 claim because it would not reach upon the court alone. But as far as leave to amend, the level of law does allow shareholders to submit a books of record demand to the company. So in case there was a leave to amend granted, we would submit a demand to the company to inspect the books of record. Okay, I'm asking about the vagueness of the complaint, whether it's plagued with particularity. I think you've argued you don't have to do that, but say we disagree. Could you make this complaint more specific and explain better what you think wasn't disclosed and how it actually led to any harm? Yes, Your Honor. We think if the court concludes that the height of particularity is applicable here and we haven't planned it, we would request the district court's leave to conduct inspection of books of records to find those additional fines. Delaware case law allows shareholders to inspect books of record, to re-plead any complaint that was dismissed for failure to adequately plead. But if we agree with you that this needs to be in federal court, would that Delaware procedure be relevant? Yes, Your Honor. If the shareholder can go, we would ask the district court to stay the file of an amended complaint in district court while we pursue inspection demand against the company. Now, sometimes there's a result without having to file a civil proceedings, but if we cannot agree with GAAP, we would have to go to a filing and enforcement action to enforce the inspection demand. Once we get those documents, we can review them and we can use them to allege anything the district court decides we haven't planned with required particularity. And do you have an expectation of what you would find? Can you give us any idea how this wouldn't be a futile endeavor? When we were deciding the complaint, the company's own statistics show that the minorities, while they compromise only 49% of senior leadership, compromise 26% of the workforce. We do believe that there might be additional documents with the company's own possession, which we're not privy to, which would further support those claims. And it was not just random, but there was a conscious or at least non-negligent feeling to us or to diversity representations that they represented in the process, Your Honor. I didn't notice that my time was almost up. Was this a question I would like to reserve for any time for rebuttal? Okay, thank you. Thank you. Good afternoon, Your Honors. May I please the court? Ramon Martinez for the defendants here. Your Honors, this case is a cynical effort to cash in on false allegations of racism, just like the four carbon copy cases that plaintiffs' counsel has filed against other leading American companies unsuccessfully over the last three years. We raised multiple grounds for dismissing this case because it was factually meritless, it was legally baseless, and because of the forum selection clause. We ultimately won this case based on one ground, but we've argued for all of the grounds all the way through. All of them are properly preserved. But why should we address those other grounds in the first instance, counsel? I don't think... I don't think you... If we're going for fact-intensive arguments, we remanded the district court to take a first pass at it. Should we do that in this case as well? No, Your Honor. I think what you should do is rule for us and affirm the district court's decision and the panel's decision in this case for essentially two reasons. First of all, this forum selection clause does not implicate, does not violate the anti-waiver provision. And second of all, even if there were a conflict between the anti-waiver provision and the forum selection clause, you would need to apply your precedent in Richards and Son. As the panel did... If we disagree with you, I'm talking about the alternative basis or affirmance that you spent a good portion of your brief discussing. Should we remand those issues back to the district court? I don't think you should, Your Honor. I think that they're straightforward. They're very factual. Based on the... Well, factual. That's why we should send it back. Sorry. It's very straightforward. The facts are very straightforward as pled in the complaint. We just don't think that this complaint comes close to stating a valid claim. I mean, the statements in this case involve things like, we believe in diversity. That's a false statement. I mean, come on. That's not even close to alleging a false statement. They can give the rise to liability here. With all respect, we have done our best to be diligent at every stage in this case to raise all our arguments. The other side didn't even bother to try to justify its complaint under a demand for utility under Rule 12b-6, even though we very properly raised them as alternative basis for affirmance. But as I said, I don't think you need to get there, because I do think it's very important to recognize that both the district court decision and the panel decision were correct in enforcing the forum selection clause. Well, while we're on this point, they did ask for leave to amend, and the district court did, but it didn't need to reach that because it went on the forum selection rationale. If we disagree with the district court on the forum selection rationale, can you respond to this idea of how they would go about it? It seems to me like your repeated questions to counsel sort of suggested that what he's hoping for is a fishing expedition that suggests he does not currently have any valid grounds to actually bring the complaint that he brought on the facts. And so if the complaint fails to state a claim or if he hasn't alleged demand for utility, that's enough for dismissal. And there's no reason to— I have to admit I'm not familiar with this Delaware procedure that he was saying he would invoke. Are you familiar with it, and can you explain whether he would be able to do that? I don't know whether he could do it now, but I think if he could do it now, he could have done it before bringing this complaint and before putting all of us through the process of having to write briefs over and over again on all of these issues. And I think, you know, just to take a step back, as I mentioned earlier, this is one of five cases that plaintiff's counsel has brought. There have been about 11 of these cases raising very similar theories. Every single one of these cases has been dismissed, 11 for 11. They've all been dismissed. Plaintiff's counsel isn't even appealing in some of the decisions. In the Norton-Lifelock case, for example, Judge Seabort, same counsel on both sides, agreed with us based on the demands utility arguments. Plaintiff's counsel didn't even bother to appeal that. Here are the allegations in the complaint, really, that do not add up to a valid claim. And with respect, we understand that the judicial process is sometimes slower than everyone would love, but here we really have done our best at every stage in the case to make all of the range of arguments, to give the district court judge, the panel, now you all, all of the tools at your disposal to resolve this case once and for all. We think that it doesn't make sense to send it back down, to allow counsel on the other side to do the work that he could have done in the first place, and to try to bolster a complaint that's just legally and factually meritless. Judge Friedland asked whether there was a request for leave to amend below. Do you have an answer to that? Do you recall whether there was a request for leave to amend? Your Honor, I was not personally involved in the district court proceedings. I do believe that they may have asked for leave to amend at some point, but I don't think, I think as Judge Friedland's questioning showed, it's not really clear that they have actually anything that they would amend to allege, and so if he's saying he needs to do more research, I think all of that could have been done earlier in the case. I'm happy to talk more about the alternative grounds. I do think one thing that is worth pointing out since we're here is that this case is difficult because the allegations themselves are meritless. It's especially difficult, though, because they have another hoop that they need to jump through, which is the demand futility requirement, and they haven't alleged that any of the directors here had any material personal benefit in the votes or in the decisions, and they haven't alleged that there's any substantial likelihood of liability, not just because the statements that they point to are, you know, not close to actionable, but also because, as the briefing below made clear, there's an exculpation clause that essentially allows, means that the directors are not liable unless there's intentional misconduct, and their own complaint expressly disclaims any intentional misconduct. It's either at page 130 or 131 or 132. They say, we're not bringing a fraud claim. We're bringing only a negligence claim on 14A. So they've sort of planted themselves into the exculpation clause. This case is meritless at the end of the day. Again, we don't think you need to get to that point because we think that we won on perfectly valid grounds under the form selection clause, but we do think if push comes to shove, the fairest course here, given how long this case has been going on, would be to resolve it in our favor on one of the alternative grounds. Regarding the form selection bylaw below and the anti-waiver provision, let me ask you, it seems like you're arguing that the provision is not implicated here because other enforcement mechanisms exist. But I guess my question is, should it or shouldn't it matter that direct and derivative claims redress different harms, assert the rights of different parties, and seek different types of remedies? Your Honor, I don't think in this case they are actually seeking different— they aren't pointing to harms that are suffered by the company. And we think all the relief that they're seeking on the 14A claim is available. And if I could just point them forward, I think the most telling and most informative provision of the complaint that explains what their theory is, it's on paragraph 228, which is at page 132 of the record. And this is sort of the sum-up paragraph after they've described their 14A claim. And here's what they say. Plaintiff, on behalf of the company, seeks injunctive and equitable relief. Why? Because the conduct of the individual defendants interfered with plaintiff's voting rights and choices at the 2019 and 2020 annual meeting. And then they say that we don't want monetary damages. So the whole theory here is that the problem is that the misleading proxy statements interfered with plaintiff's voting rights, her personal voting rights. And that is consistent. That articulation of a 14A theory is consistent with how the Supreme Court, not just in Borak but in the cases since Borak, explaining exactly what a 14A claim is, in cases like Mills and Piper and others, it's explained what those claims are. And, really, those claims are about protecting the rights of shareholders to receive accurate information when they're going to cast votes. And the case law, as it's evolved and as it's clarified and crystallized since Borak, has made clear that these exact type of claims, the exact claim that is being brought here is a direct claim. This Court's decision in the Jobs case makes that absolutely clear, drawing on case law from multiple decisions from Delaware law. Now, I believe there was a question to the other side about what Delaware law would say about direct versus derivative. And my friend on the other side said, well, the statement in the Delaware judge's letter really doesn't keep up to date with current Delaware law because Chancellor Strine had an opinion in Boilermakers. Well, Chancellor Strine signed the letter. Chancellor Strine knows exactly what Delaware law is, and he certainly knows what Boilermakers means. So, under Delaware law, as reflected not just in the amicus letter from the Delaware judges, but from the authorities cited in our brief, this is a direct claim. Under Jobs, this Court's precedent, this is a direct claim. She's the master of her complaint. What if she left out that allegation that she was personally harmed? What do we do then? Do we have to just accept that the only class of action is derivative? I think, well, first of all, she is the master of the complaint. She pled this as a claim involving the deprivation of her own personal right to an informed vote. If she had pled it differently, I think then what you would need to do is look at the nature of the 14A claim under federal law and how it's been treated both under your precedent, Supreme Court precedent, and Delaware precedent. And I think what the cases since Borak really crystallize is the idea that, and let me just read you the quote from Mills, which is soon after Borak. The idea is that 14A protects the individual shareholder's right to an informed vote. Here's what Mills says. 14A is, quote, intended to promote the free exercise of the voting rights of stockholders by ensuring that proxies would be solicited with accurate information. So, 14A is all about protecting the shareholders. Now, counsel on the other side talked about Borak, and I think it's important to understand Borak in context. Borak was a case that was not styled as a derivative case, okay? It was not, it did not purport to speak or be litigated on behalf of the company, and the complaint in Borak did not satisfy the rule 23D at the time, which required demand futility in derivative cases. And the SEC filed an amicus brief that the court essentially adopted, saying that in this kind of case, essentially that the harm that's being tackled in this kind of case is one that's suffered by all the stockholders, and it's derivative in the sense that all the stockholders are affected equally. But that didn't mean that the claim was actually a derivative claim in the modern sense, where we're talking about actually representing the interest of the company. And so I think if you look at Borak in context, I think the best way to understand Borak is through the SEC's subsequent amicus brief, which we cited in our supplemental brief. It's the SEC's amicus brief in the Kamen case, which was drafted by the Chief Justice when he was practicing law, that really explained what Borak meant in a way that I think is very clear, because otherwise that decision can be a little bit opaque. But we think that to the extent that we think that the plaintiff in this case could have brought the same kind of action that was at issue in Borak, which is one that's brought in the name of an individual stockholder, and that asserts harms that were suffered by that stockholder and other stockholders, and could seek the full range of equitable and injunctive relief. And let me just say a word about relief, because that came up. We believe that the relief that's being sought on, and we understand the complaint to say that the relief that's being sought on the 14A claim is essentially requiring the company, an order that would require the company to hold a series of votes. And we understand that those first certain corporate reform policies that would address diversity. And we think that that would be appropriate equitable relief under the Mills case, which explains that broad forms of equitable relief can be designed to take account of the nature of the violation. We think that those kinds of relief would be appropriate in a direct claim. So that takes care of all the relief we think is asked for. Now, the other side said they're also seeking disgorgement. We understood the disgorgement request in their complaint to be tied to their unjust enrichment claim. I believe it's on page 129 of the record excerpts, where that's the place where they specifically talk about disgorgement within the context of unjust enrichment. Even if they were seeking disgorgement, though, with respect to a direct 14A claim, we don't see any reason in federal law why that would not be available. We think that disgorgement could well be available in a direct action. So if you take disgorgement plus these new votes that plaintiff has asked them for on the different corporate reforms, if you take all of those, we think all of those forms of relief are available in a direct claim. The derivative claim is unnecessary. Can you tell me whether or not the Exchange Act and the Delaware Act impose different penalties? Do they impose different penalties for this type of conduct, the plaintiff alleges? So I have not personally studied all of the forms of relief that would be available on a Delaware state law derivative claim. However, I can tell you that the panel asked this exact question or versions of this exact question to my adversary multiple times in the panel argument. And when asked over and over again, the answer came back. The counsel was unable to point to anything that they would not be able to get in a derivative state law claim in Delaware court, but they could not get here. Now, we think that that's relevant to the, you know, essentially our second argument, which is that the advanced China sort of rationale should apply here, even if the anti-waiver provision is implicated. We think that you don't need to get to that question because we don't think the anti-waiver provision is implicated at all because a derivative action is just un- even if it were available, it's just unnecessary here. And it's unnecessary for the reasons, Judge Rest, that you all emphasized in your questioning, which is that the text of the anti-waiver provision does not focus on procedural mechanisms. It focuses on compliance. And compliance, as we know from McGlann, means compliance with the substantive obligations of the Act. So I think the question that you all should ask yourselves when applying the anti-waiver provision is, is a derivative action necessary to ensure that GAP still has to comply with the substantive obligations of the Exchange Act? Can I ask a question about your second point, Ben, the sum point? How is that possible that even if this foreign selection clause violates the anti-waiver provision, that some sort of amorphous public policy can trump federal statute? Yeah, I think, Your Honor, I think that the idea would be that the anti-waiver provision is not specifically targeted to foreign selection clauses, and so it's a general anti-waiver provision, and therefore it would not be sufficient to essentially disrupt the background common law principle that these rules, foreign selection clauses, should be enforced. And I think we can see that idea in this Court's Gemini decision, which came after Sun. And in Gemini, the Court was faced with an Idaho anti-waiver provision that was much more specific and said essentially foreign selection clauses can't be enforced to take away the Idaho forum. And the Court said, okay, well, that anti-waiver provision will enforce. However, in cases like Richards and Sun, where the anti-waiver provision was less specific, less targeted, the Court was fully comfortable with the idea that the general common law principle of enforcing foreign selection clauses would trump what would arguably be an anti-waiver provision. Is that common law stronger than just the general common law that we follow in parties' agreements? I think that's another reason. I mean, obviously, you have a, you know, there's a question about whether that idea of following parties' agreements would hold in the face of an anti-waiver provision, which says that parties can't agree to certain things. But in the context of Richards, I think Richards is a really important case. And I understand my colleague not to be asking you to overrule it. Richards posed essentially this same problem here as a textual matter, which is that the anti-waiver provision said you can't waive, you know, the Exchange Act obligations. And the foreign selection clause said you have to go to the U.K. under U.K. law in a situation in which the Exchange Act claim would be completely extinguished. And, Judge Thomas, I think your dissent in the Richards case pointed out the textual problem that Judge Bumate is focused on. Yes, but it was so focused on international versus domestic in Richards that I think the outcome would have been different if it were purely a domestic case. Well, I recognize the language in the Richards case. I think there's sort of two arguments here, candidly, Your Honor. I think one is the textual point, and I think Richards deals with the textual point, although I'm sure you might still disagree with that. But I think it resolved the textual point, and it also resolved the Mitsubishi point by saying that that language that opposing counsel invokes from Mitsubishi is jigta and doesn't disrupt the result. So then we're left, I think, with the question of whether Richards' holding should also apply in the domestic context. And that's when we go to the Advanced China case, which directly addressed this question and looked to the Supreme Court's decision in Atlantic Marine, which recognized a sort of equal treatment principle. And the Supreme Court in Atlantic Marine specifically says that, and I'm quoting here from Atlantic Marine, courts should evaluate forum selection clause pointing to a non-federal forum in the same way that they evaluate a forum selection clause pointing to a federal forum. And so the court basically said the same rules apply, and we think the Advanced China case correctly adopts that principle. We think there are other reasons, even beyond Atlantic Marine, to do that. The Shirk case is one that the Supreme Court had in which the Supreme Court enforced an arbitration provision that would have sent a case to an arbitral tribunal in Paris, but enforcing Illinois state law. And so in that case, the court didn't seem to be troubled by the fact that the result of enforcing the forum selection clause, the arbitration provision, may well have been to eliminate a securities claim, and instead to enforce Illinois state law. So Gemini recognizes that a clear enough statement of strong public policy can override a forum selection clause. I'm wondering why we shouldn't read a federal statute that has both an exclusive federal jurisdiction clause and an anti-waiver clause as together expressing a strong public policy that we want this kind of claim to be in federal court. Well, I think the exclusive jurisdiction clause doesn't give you anything new, because I don't think that exclusive jurisdiction principle is actually violated here, because I think we all agree that the claim is not going to be brought in Delaware. So I think the question is whether— But that's only if you think that exclusive jurisdiction serves the purpose of uniformity, but I think it also serves the purpose, and the Supreme Court has said this repeatedly, of effective vindication of federal rights. Well, I think that in McMahon, the court looked at the exclusive jurisdiction provision and said that that wasn't enough to trigger the anti-waiver issue. I think, you know, going back to your question about Gemini, I think that the language that the Sun Court was looking at, the anti-waiver provision, I think it was the Washington anti-waiver provision in Sun, was identically worded to the anti-waiver provision in the Federal Exchange Act. And so I think that that— But there's no—we have Congress saying not just anti-waiver, but also exclusive federal jurisdiction. We want these claims in federal court. And I don't understand why we shouldn't say that's Congress's way of expressing a strong public policy. I think, with respect to that, I think that the way to understand the exclusive jurisdiction provision is not that we want these claims in federal court. It's that we don't want them in state court, and there's nothing about enforcing the form selection clause that would make anyone bring these claims in state court. So I think—just take a step back. With respect to—we have our two basic arguments. I want to make sure that on the anti-waiver provision, there aren't any additional questions, and then maybe I can talk a little bit more about the Sun decision and why we think it's appropriate to apply Richard's reasoning even in the domestic context. Could you speak to the Delaware law issues before you sit down? Those are the subject of some of the supplemental briefing we asked for. Absolutely, Your Honor. We think the Delaware law issues are a bit of a red herring here. Probably wouldn't surprise you to hear that from me, but let me explain why. We think these provisions are enforceable and are valid under Section 109, a provision that hasn't gotten a lot of briefing, but Section 109 has interpreted in both the Boilermakers decision and the Salford decision. The other side is saying, very briefly, in just a couple pages, tacked on to the end of their supplemental brief, that they think that Section 115 creates a problem. We think that that argument fails for three reasons. First of all, it's been weighed. I recognize we're in front of it on bond court, and maybe they have an opportunity to make new arguments. We don't think that you should give them that opportunity, given that it was weighed as the panel correctly determined. Even if you get past the waiver, there's still two other problems. Section 115 has been conclusively interpreted by the Delaware Supreme Court in the Salsburg case, in footnote 79, in the accompanying text, to say absolutely nothing about federal law claims. And it specifically is not intended to govern claims that are based on federal law, like a Federal Exchange Act claim. So we think that that is a complete and total reason to just conclude that 115 is not a problem here. Now, I recognize that the Seafarers decision from the Seventh Circuit came out the other way on 115. Seafarers did not consider footnote 79 and the express holding of the Salsburg court on this exact issue. It wasn't briefed to the parties there. We don't think that it's persuasive, and I think if the court were to look at Salsburg, I think Salsburg very clearly interprets 115 to cover only state law claims, not federal claims. Even if that weren't the problem, the ultimate argument about 115, I think, depends on the other side being correct about one of their federal law arguments. So they are basically saying that 115 bars this form of selection clause because it violates, because of the language in 115 that talks about applicable jurisdictional requirements. And their argument, as the Seventh Circuit found in Seafarers, is that if you have a provision that violates the anti-waiver provision, then that means applicable jurisdictional requirements are in play, and therefore Section 115 eliminates the form selection clause. We would just say if you ultimately conclude with them that it's a matter of federal law, we lose. It really doesn't matter whether we also lose under state law. In any event, though, we think that 115, even if it did apply to federal claims, which it doesn't, we think that the language that they're relying on is language that authorizes form selection clauses. It's not language that prohibits form selection clauses. And for that additional reason, we just don't think it's any better in here. Well, I mean, there's a lot of discussion about what it doesn't allow, but what affirmatively is this provision doing? What do you think 115 is trying to accomplish? We think it's codifying the holding of Boilermakers. And that's, I think, what the clearest explanation in the legislative history, and I think in Salzburg as well, I think that it's codifying Boilermakers and it's basically saying it's okay to have form selection provisions, but then it's also having a prohibition in there and saying you can't prohibit derivative actions based on state law from being brought in Delaware State Court. Your Honor, I think with respect to the anti-waiver provision, I want to make sure that, just to make sure we're absolutely clear on this, our ultimate position here, we're not saying that the plaintiff or someone in plaintiff's position could not bring a Securities Act claim. What we're saying is that the proper way to do that is through a direct claim. Because they have the opportunity to bring the claim directly, there's no need for a derivative action, and there's certainly no threat to the idea that GAP still has to comply with the securities laws. At the end of the day, the text of the anti-waiver provision is focused on whether GAP still has a substantive obligation to comply with the securities laws. We had those obligations before the forum selection clause. We have those obligations now. We're subject to enforcement by the SEC. We're subject to direct actions, not just as individual actions. We're also subject to direct class actions. There are all sorts of ways to enforce our compliance, and so nothing in the forum selection clause takes away our duties to comply. With respect, finally, just to come back, Your Honor, to the second argument about Sun. We really do believe that at the end of the day, the arguments that the other side are making are inconsistent with both Richards and Sun. As I've noted, their textual argument, their Mitsubishi argument, is flatly contradicted by Richards. With respect to Sun, they try to distinguish Sun in various ways. None of those work. They say that Sun, Your Honor, here you justify Sun in that line of cases based off of common law, but those cases don't talk about common law. They talk about public policy. I think that to the extent that it's talking about the public policy that's been ratified by the Supreme Court in cases like Bremen and Atlantic Marine, to reckon with... They don't say anything like that, that there's this public policy that trumps federal statutes. That's a big leap from Atlantic Marine. I think that what they... You're right that it's not as explicit. I think the best way to sort of rationalize all this, and again, the other side isn't asking you to overturn Richards, which I think is sort of the implication of your question. The best way to rationalize this is with the idea that you need something more specific. If you're going to have an anti-waiver provision, it's going to forbid someone from having a foreign selection clause. It needs to be more specific than the kind of anti-waiver provision. That's my problem. Don't we need something more specific on the public policy side? Well, I think that there is a general... What are you appealing to? I don't understand. I think it's a standard candidate of textual construction, legal construction, to say that we're not going to read statutes to abrogate the common law unless there's a clear statement. And I think that's sort of the concept of the general idea that I see in the Gemini decision and in Sun itself when it says you need to have a clearer statement of an anti-waiver policy in order to upend what is otherwise, you know, the general rule that the Supreme Court has repeatedly said is really important, which is enforcing foreign selection clauses. I also think that, you know, again, some of the points that you're making are good ones to think through, of course, but I think that they do sort of would require you to overturn Richards. And if you overturn Richards, that's a big deal. Not only have they not asked for it, but that would put this court in a very lonely position because I think all eight others we cited, I think eight other courts or seven other courts in our brief that have adopted and applied the exact same rules from Richards. And so that would create a very lopsided circuit split, and I don't think the court should want to be on the wrong side of that split, respectfully. With respect to the other ways in which counselors tried to distinguish Sun, it's true that Sun did involve a concession in that case, but the court made a concession that the Washington claims could still be brought in California. But I think it's pretty clear from the discussion that that concession was not essential to its holding and its analysis of the anti-waiver provision. And so we don't think that that works. And, in fact, the Sun decision at footnote 6 on page 1092 makes clear that extinguishing a particular statutory claim is only a problem if the plaintiff is denied any relief in the designated forum. And here, counsel on the other side has conceded at great length, including in the panel argument, that the remedies in Delaware are essentially capable of giving him all the relief he needs and wants in this case. So we don't think there's a basis for distinguishing Sun. And we think Sun was correctly decided. We think it's consistent with Atlantic Marine. We think it's consistent with SHRP. We think it's consistent with the common law canon of construction. And I think Sun ultimately is protective of the rights of potential plaintiffs to bring claims when there are these kinds of misstatements. It just says that those claims are going to be brought under Delaware law, and that's perfectly okay, because if the plaintiff has conceded, the same remedies are available there. Your Honor, I just want to close, if I could, just by saying a quick word. We've talked a lot about the technical aspects of this case, but I kind of want to go back just very briefly to some of the questions at the beginning of the argument about the alternative grounds. And I just don't want to focus on the form selection clause to obscure the fact that there's really no merit to these allegations whatsoever. The reality here is that GAP is a nationally recognized leader among companies in fostering diversity and promoting anti-discrimination policies in the workplace. At the time of the complaint, our company, a company that's accused of racism, was led by one of only three women of color CEOs in the entire Fortune 500. Seven of ten members of her leadership team were women. Six of 13 directors were women. Fifty-six percent of GAP's workforce was nonwhite. In 2021, the company was ranked, literally ranked, number one out of 11,000 companies in the Refinitiv, which is this industry standard diversity and inclusion index. In 2022, the company slipped. It was number four out of thousands and thousands of companies. The phony accusations of racism in this case discredit and undermine the real fight for equality in our country. GAP is not part of the problem here. GAP is part of the solution. We respectfully ask you to affirm the decision below on any of the grounds that we've given you. Thank you, Your Honors. I think it's important to keep in mind why we've asked for a petitioner on bank and why this case went on bank. Early this year, the Seventh Circuit in Seifert examined an identical clause and found that it violates both Delaware law and federal law. This court should not knowingly create a circuit split when, under the facts of this case and under the applicable law, there's only one conclusion, and that this clause cannot stand as compared to the automatic provision. Indeed, until the Seifert decision and this court's decision, all the other courts that have considered similar clauses have severed the proxy law claims and dismissed refugee duty claims that are to Delaware but kept jurisdiction over the proxy law claims, recognizing the courts, federal courts, have obligation to excise exclusive jurisdiction granted to them by Congress. With the reversal in Seifert, the district court's decision in this case is the outlier, the only decision to not have followed that path and have concluded that this clause can be applied to a derivative 49 claim, even though it's undisputed that it completely abrogates that claim to preclude shareholders from prosecuting a derivative 49 claim in any forum. And in Seifert's Seventh Circuit, look to both federal law and Delaware law. Again, we agree with my colleague on the other side that this court does not need to reach Delaware law. We think that federal law is clear enough in the automatic provision that this court can reverse on that ground alone. But if the court does look to Delaware law, we do submit that Sections 115 and 109 do not authorize that bylaws that issue here. And as Seifert's court noted, Section 115 specifically deals with forum bylaws. Therefore, between 115 and 109, the court should look to 115 to see if this clause would be authorized. And as my colleague conceded, 115 was meant to horrify the decision boilermakers. And while we agree that Chancellor Strine's hypothetical is not part of the whole of the case, it is the predictor that the Seventh Circuit looked to in Seifert's. And what Chancellor Strine said then, which is contrary to what DeFrancois Strine is saying now in Anamika's letter, is that the defense would have a problem if they tried to enforce a clause against an exclusively federal claim that is subject to federal clause-exclusive protection. That's the best expression of Delaware law that we have. We also have the Selden decision. He didn't, in that case, just leave to another day. That question was never answered in the opinion. It was like, we don't have to get into these hypotheticals. So boilermaker doesn't stand for that proposition. It's just, here's a thought. Here's a hypothetical. We'll leave it for another day. Am I wrong about that? No, you're not wrong, Your Honor. That was a hypothetical. The court has said it. It's not a whole deal with the case. We agree with that. But it's important. It shows how Delaware courts would approach the situation. And we also need to look no further than the Selden decision that my colleague relies upon extensively. The Selden decision from the Delaware Supreme Court, where it says, again, quoted from boilermakers, that the four clauses are meant to be procedural devices. They decide where a claim can be litigated, not whether. The clause in this case decides whether the claim can be litigated. There is no doubt that the Delaware Supreme Court, if faced with this decision, will find this clause to violate both Delaware law and federal law. And, again, in Salzburg, what was the issue? Was there a place to be required to bring federal claims in federal court? The court said, there's nothing wrong with that. You can go to federal court for federal claims. But that's not what we have here. We have a federal claim that Congress said is subject to exclusive jurisdiction in federal courts. And, by the way, you cannot waive compliance with any requirements of the act. And the company, not through Congress, but through a pen of a corporate lawyer, is trying to eliminate that cause of action. And they're asking the court to find, oh, you need something more than this claim cannot be waived. Now, in German ecologies, the court went out of its way to engage in metal gymnastics to find a waiver. And said, well, in this case, there was a waiver because, in addition to saying you cannot waive compliance, the article says it's a matter of public policy. But that makes no sense. That statute from Congress that says you cannot waive compliance with the act is different than a statute that would include additional words. By the way, we really need it. This is public policy in federal government. You must remember that Congress passed the Securities Act and the Exchange Act following the disastrous stock market crash in 1929. It did so in response to widespread abuses in the securities industry. It did so because it knew that shareholders stood in a much weaker bargaining power with the corporation and the insiders. When Congress said you cannot waive compliance with the subject requirement of the act, it meant that it didn't have to say that this is a matter of public policy. A statutory text is the expression of legislative public policy. And that's what the CFR decision reached just earlier this year. Non-waiving is not going into the fabric of federal law. It's a part of the Exchange Act. It represents the public policy of the federal government. Now, it's also important to keep in mind that this clause and this decision, it's not going to have an effect in this case. It's not going to have an effect just with the derivatives, what he claims. You have a broad effect on all derivatives, exclusively federal claims. Now, in other cases, there could be situations where shareholders will not have a visual right to bring a direct 40-day claim. The company might enforce it against derivatives and big claims. And if this court rules for gap, that will open the doors for some creative lawyer down the line to enact a federal clause to govern direct claims, direct 10-day claims. Now, if this court holds that the anti-waiver provision does not say what it does, what it says, it is very much possible that companies will enact those clauses and argue, well, we're not saying you need to waive it. We're just saying you have to bring it in Delaware court. But since Delaware court does not have jurisdiction over direct 10-day claim, direct 40-day claim, that would result in impermissible waiver of the substantive rights. Again, the implications of this case are much greater than just derivative 40-day claim, as in this case. So we respectfully submit that the court should follow CFRS. It should not wrongly create a service plan. And should follow the line of cases the Supreme Court has issued in the arbitration context, which every time the Supreme Court enforced an arbitration clause, it did so only after being satisfied that the plaintiffs had the opportunity to bring the substantive exchange of claims, substantive exchange of claims, in the alternative forum. So in this case, we will submit that Congress met what it said. What it said, you cannot waive compliance with the substantive requirements of the act. Now, whether you view that as a clear statute directive or as an embodiment of public policy, it renders that clause invalid and unenforceable. Are there any questions? Thank you. We respectfully request the jury to close this hearing. Counsel, thank you both very much for your rolling with presentation. The case of Noel Lee versus Robert J. Fisher is now submitted. You are adjourned. Thank you. This court for this session stands adjourned.
judges: MURGUIA, THOMAS, IKUTA, NGUYEN, FRIEDLAND, NELSON, BADE, BRESS, FORREST, BUMATAY, UNKNOWN